Case 1:07-cv-07657-LTS-GWG    Document 6-5    Filed 08/30/2007    Page 1 of 15

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ABN AMRO MORTGAGE GROUP, INC., :
: Case No. 07-_____
             Plaintiff, :
:
   -against- : COMPLAINT
:
NATIONAL SETTLEMENT AGENCY, INC., :
STEVEN M. LEFF, RACHEL M. LEFF and : Jury Trial Demanded
RICHARD A. LEFF, :
:
             Defendants. :
:
------------------------------------x

      Plaintiff, ABN AMRO MORTGAGE GROUP, INC., by and through its attorneys, BRYAN CAVE LLP, complains and alleges as follows:

### I.    PRELIMINARY STATEMENT

1.    This is an action for damages resulting from Defendants' breach of contract, conversion, fraud, breach of fiduciary duty, and negligence relating to their role as closing agent for plaintiff on certain residential mortgages.

### II.    PARTIES

2.    Plaintiff, ABN AMRO MORTGAGE GROUP, INC. ("AAMG"), is a Delaware corporation with its principal place of business at 6300 InterFirst Drive, Ann Arbor, Michigan.

3.    Defendant National Settlement Agency, Inc. ("NSA") is a New York corporation which, upon information and belief, maintains a principal place of business at 404 Park Avenue South, 5th Floor, New York, New York.

4.    Defendant Steven M. Leff ("Steven Leff") is an individual who, upon information and belief, is the president of NSA and last resided at 15 Anvil Ct., East Hampton, New York.

5.      Defendant Rachel M. Leff is an individual who, upon information and belief, is the chief executive officer of NSA and last resided at 15 Anvil Ct., East Hampton, New York.

6.      Defendant Richard A. Leff is an individual who, upon information and belief, is an attorney licensed in the State of New York and resides at 10 Park Road, Short Hills, New Jersey.

### III.     JURISDICTION AND VENUE

7.      Jurisdiction in this action is based upon the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of seventy-five thousand dollars, exclusive of interest and costs.

8.      Venue for this action is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this District.

### IV.     FACTS

9.      AAMG is in the business of originating and servicing residential mortgage loans.

10.     In the furtherance of closing certain mortgage loans from April through July of 2007, Defendants undertook to act, and acted, as AAMG's closing agent.

11.     Defendants, acting as AAMG's closing agent, had the legal obligation, at the time of the closing of each mortgage, to disburse to AAMG's borrowers and other payees, according to AAMG's closing instructions, the specific funds that AAMG had wired in trust to one of NSA's accounts at the JP Morgan Chase Bank: "National Settlement Agency, Inc., Attorney Escrow Funding Account" Account No. 904613917, ABA No. 021000021; and "National Settlement Agency, Inc., Attorney Funding Account - Gen," Account No. 987096757765, ABA No. 021000021, among others (collectively, the "Escrow Accounts").

12.     Upon information and belief, in April through July of 2007, Defendants, without authorization, took for their own use and interest and converted or allowed to be converted approximately $2.26 million of AAMG's funds that had been wired into one of NSA's Escrow

Accounts for Defendants to disburse or cause to be disbursed to AAMG's borrowers and other designated payees at several mortgage closings, as described more fully below.

13. For example, in or about May and June of 2007, transfers totaling more than $600,000.00 were made from one of NSA's Escrow Accounts to a bank account in the name of Rachel Leff.

14. At the end of July 2007, Steven Leff advised AAMG that funds AAMG had wired into NSA's Escrow Accounts had been embezzled, specifically affecting the closing of the mortgage loans relating to the Kramer Mortgage (as described below), the Nelson Mortgage (as described below), and the Alcantara Mortgage (as described below). He further advised that he did not know where the funds were.

15. In or about August 2007, Steven Leff provided a written statement (the "Statement") to the Federal Bureau of Investigation ("FBI") acknowledging that, on numerous occasions, he knowingly and willfully made unauthorized transfers of funds that were held in NSA's Escrow Accounts and that belonged to banks on behalf of which NSA acted as settlement agent for real estate closings. The Statement acknowledged that the funds were transferred to NSA's operating account and/or to Steven Leff personally.

16. On August 21, 2007, Steven Leff was arrested by Special Agents of the FBI and charged with violating 18 U.S.C. § 656, a criminal statute, for willfully misapplying bank funds placed into NSA Escrow Accounts to NSA's and his own uses, purposes and interest, all without authorization. He was released on a $1 million bond.

### 1. The Kramer Mortgage (Loan No. 655368628)

17. AAMG agreed to make a loan to Kenneth and Nicole Kramer ("Kramer") in the amount of $413,000, to be secured by a mortgage on the real property located at 94-32 Magnolia Court, Unit 3B, Ozone Park, New York 11417.

18. Defendants agreed to act as the closing agents for this mortgage.

19. The closing for the Kramer Mortgage transaction occurred on or about April 16, 2007.

20. AAMG wired $413,275.05, the net amount to be disbursed at the closing, into one of NSA's Escrow Accounts and provided Defendants with specific instructions for its disbursement to Kramer and other payees.

21. Upon information and belief, Defendants took control and dominion over this $413,275.05 and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

22. While closing checks were issued for the Kramer Mortgage, as a result of Defendants' unauthorized taking and misapplication of those escrowed funds, there were insufficient funds to satisfy all of the checks issued.

23. With the exception of the $201,833.00 payment to Chase, the funds wired have not been used to pay off prior liens or complete the closing of AAMG's loan.

### 2. The Nelson Mortgage (Loan No. 656243674)

24. AAMG agreed to make a loan to Glenn W. Nelson and Kerri R. Lubell-Nelson ("Nelson") in the amount of $417,000, to be secured by a mortgage on the real property located at 95 Upper Lakeshore Drive, Katonah, New York 10536.

25. Defendants agreed to act as the closing agents for this mortgage.

26. The closing for the Nelson Mortgage transaction occurred on or about June 18, 2007.

27. AAMG wired funds totaling $420,878.54 into one of NSA's Escrow Accounts and provided Defendants with specific instructions for its disbursement to Nelson and other payees.

28. Upon information and belief, Chase Bank, which was disbursed $201,833.00, is the only party that has been paid with respect to the closing. Defendants took control and dominion over

4

the balance of $219,045.54 and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

29. While closing checks were issued for the Nelson Mortgage, as a result of Defendants' unauthorized taking and misapplication of those escrowed funds, there were insufficient funds to satisfy the checks issued.

30. The funds wired have not been used to pay off prior liens or complete the closing of AAMG's loan.

### 3. The Alcantara Mortgages (Loan Nos. 656123577 and 656203609)

31. AAMG agreed to make two loans to Carlos and Rosa Alcantara ("Alcantara"), to be secured by a mortgage on the real property located at 44 Autumn Circle, Yonkers, New York 10703. The amount of the first loan was $500,000.00 (the "First Alcantara Mortgage"). The amount of the second loan was $62,500.00 (the "Second Alcantara Mortgage") (collectively, the "Alcantara Mortgages").

32. Defendants agreed to act as the closing agents for these mortgages.

33. The closing for the Alcantara Mortgages occurred on or about July 6, 2007.

34. AAMG wired the net amounts to be disbursed at the closing for each of the loans, totaling $498,671.02 for the First Alcantara Mortgage and $63,071.39 for the Second Alcantara Mortgage, into one of NSA's Escrow Accounts and provided Defendants with specific instructions for its disbursement to Alcantara and other payees.

35. Upon information and belief, Defendants took control and dominion over the $561,742.41 that was wired for the Alcantara Mortgages and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

36. While closing checks were issued for the Alcantara Mortgages, as a result of Defendants' unauthorized taking and misapplication of those escrowed funds, there were insufficient funds to satisfy the checks issued.

37. The funds wired have not been used to pay off prior liens or complete the closing of AAMG's loans.

### 4. The Carnevali Mortgage (Loan No. 6563122144)

38. AAMG agreed to make a loan to Marc Carnevali ("Carnevali") in the amount of $584,000.00, to be secured by a mortgage on the real property located at 210 Lafayette Street, Unit 6E, New York, New York 10012.

39. Defendants agreed to act as the closing agents for this mortgage.

40. The closing for the Carnevali Mortgage transaction occurred on or about July 6, 2007.

41. AAMG wired $582,096.36, the net amount to be disbursed at the closing, to NSA Account No. 904613917 and provided Defendants with specific instructions for its disbursement to Carnevali and other payees.

42. Upon information and belief, Defendants took control and dominion over this $582,096.36 and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

43. While closing checks were issued for the Carnevali Mortgage, as a result of Defendants' unauthorized taking and misapplication of those escrowed funds, there were insufficient funds to satisfy the checks issued.

44. The funds wired have not been used to pay off prior liens or complete the closing of AAMG's loan.

6

### 5. The Schnatter Mortgage (Loan No. 656550325)

45. AAMG agreed to make a loan to Scott and Traci Schnatter ("Schnatter") in the amount of $450,000.00, to be secured by a mortgage on the real property located at 323 Charles Avenue, Massapequa, New York 11762.

46. Defendants agreed to act as the closing agents for this mortgage.

47. On or about July 13, 2007, AAMG wired $446,334.82, the net amount to be disbursed at the closing, to NSA Account No. 987096757765 and provided Defendants with specific instructions for its disbursement to Schnatter and other payees.

48. Upon information and belief, Defendants took control and dominion over this $446,334.82 and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

49. The closing for the Schnatter Mortgage transaction occurred on or about July 16, 2007, and while closing checks were issued, upon information and belief, as a result of Defendants' unauthorized taking and misapplication of those escrowed funds, there were insufficient funds to satisfy the checks issued.

50. Upon information and belief, the funds wired have not been used to pay off prior liens or complete the closing of AAMG's loan.

### 6. The De Carlo Mortgage (Loan No. 656597616)

51. AAMG agreed to make a loan to Joseph and Jennifer De Carlo ("De Carlo") in the amount of $300,000, to be secured by a mortgage on the real property located at 2 Millburn Road, South Setauket, New York 11720.

52. Defendants agreed to act as the closing agents for this mortgage.

C018858/0201460/1404987.5

53.  On or about July 24, 2007 AAMG wired funds totaling $300,491.25 for the closing to Account No. 987096757765 and provided Defendants with specific instructions for its disbursement to De Carlo and other payees.

54.  The closing for the De Carlo Mortgage transaction occurred on July 25, 2007, and while closing checks were issued, as a result, upon information and belief, of Defendants' unauthorized taking and misapplication of escrowed funds, there were insufficient funds to pay checks totaling $39,250.00.

55.  Upon information and belief, Defendants took control and dominion over $39,250.00 of the wired funds and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

56.  Of the funds wired, $39,250.00 has not been used to pay off prior liens or complete the closing of AAMG's loan.

## V.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Breach of Contract)

57.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-56, above.

58.  Defendant NSA had an implied-in-fact contract with AAMG whereby defendant NSA would act as the closing agents for AAMG at and in connection with the above specified closings in exchange for a fee.

59.  As part of their contract with AAMG, defendant NSA agreed to hold in trust the funds that AAMG wired into one of the Escrow Accounts, and to disburse those funds only in accordance with AAMG's instructions.

60. By failing to disburse as AAMG directed, and converting, funds wired to into one of the Escrow Accounts by AAMG, defendant NSA breached their contract with AAMG.

61. By reason of this breach, AAMG has been damaged in a sum to be proven upon the trial of this matter, but believed to be no less than $2,261,744.10.

## SECOND CLAIM FOR RELIEF

(Conversion)

62. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-56, 58-61, above.

63. AAMG entrusted funds to Defendants for the express and sole purpose of disbursing those funds in connection with the above-described mortgages.

64. Rather than the funds being disbursed to the payees designated by AAMG, Defendants, upon information and belief, individually and jointly exercised dominion and control over AAMG's funds by using those funds for their own purposes and interests.

65. Defendants had no legal, equitable, or other right to use the funds for anything other than disbursement in connection with the mortgages in accordance with AAMG's instructions.

66. As a result of this conversion, AAMG has been damaged in a sum to be proven upon the trial of this matter, but believed to be no less than $2,261,744.10.

## THIRD CLAIM FOR RELIEF

(Fraud)

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-56, 58-61, and 63-66, above.

68. Upon information and belief, Defendants agreed to conduct the above-described mortgage closings for AAMG, while having no present intention to actually close the mortgages according to AAMG's instructions.

9

69. Upon information and belief, Defendants thereby knowingly and intentionally misrepresented to AAMG that they would disburse funds as instructed.

70. Defendants made these misrepresentations with the intent to induce AAMG into wiring funds into one of the Escrow Accounts so that they could convert those funds to their own uses, purposes, and interests.

71. Reasonably relying upon these material misrepresentations, AAMG wired funds into one of NSA's Escrow Accounts to be disbursed by Defendants at the mortgage closings.

72. Upon information and belief, Defendants, as was their intention when they agreed to act as a closing agent for AAMG, did not disburse the funds according to AAMG's instructions, and thereby damaged AAMG in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

## FOURTH CLAIM FOR RELIEF

(Breach of Fiduciary Duty)

73. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-56, 58-61, 63-66, and 68-72, above.

74. Defendants, having undertaken to act, and having acted as, AAMG's closing agents in connection with the above-described mortgages, owed a fiduciary duty to AAMG to perform their closing functions with the utmost degree of care, skill, and diligence.

75. Defendants breached their fiduciary duty by converting the funds that had been wired in trust into one of the Escrow Accounts.

76. Defendants breached their fiduciary duty by drawing checks upon insufficient funds.

77. Defendants breached their fiduciary duty by not redrawing dishonored checks, or checks that were never delivered to the designated payees, upon good funds.

C018858/0201460/1404987.5

78. Defendants breached their fiduciary duty by failing to supervise those under their control who contributed to AAMG's losses.

79. These breaches of fiduciary duty were the proximate cause of AAMG's losses, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

## FIFTH CLAIM FOR RELIEF

(Negligence)

80. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-56, 58-61, 63-66, 68-72, and 74-79, above.

81. Defendants jointly and severally owed a duty to AAMG to ensure that the funds entrusted to Defendants for disbursement at the mortgage closings described herein were in fact present in the accounts upon which checks were drawn, and to ensure that all necessary checks were drawn and sent to the designated payees at or immediately after closing.

82. Defendants breached this duty by not ensuring that sufficient funds were available in NSA's Escrow Accounts to cover the checks drawn by Defendants at the closings described herein and by failing to deliver checks to the designated payees.

83. As a proximate cause of this breach of the duty of care, AAMG has been damaged in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

## SIXTH CLAIM FOR RELIEF

(Unjust Enrichment)

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-56, 58-61, 63-66, 68-72, and 74-79, and 81-83, above.

11

85. Upon information and belief, Defendants wrongfully benefited from AAMG's wiring of mortgage disbursement funds to them by enjoying portions of those funds for their own personal uses, purposes, and interests.

86. None of the Defendants were the intended beneficiaries of AAMG's mortgage disbursement funds.

87. In equity and good conscience, Defendants must return AAMG's funds.

88. As a result of this unjust enrichment, AAMG has been damaged in an amount to be proven upon the trial of this matter, but believed to be no less than $2,261,744.10.

## SEVENTH CLAIM FOR RELIEF

(Money Had and Received Against all Defendants)

89. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-56, 58-61, 63-66, 68-72, and 74-79, 81-83, and 85-88, above.

90. Defendants received from AAMG an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

91. That money should have been paid to AAMG's designated beneficiaries.

92. Not having been paid to AAMG's designated beneficiaries, that money still belongs to AAMG and AAMG is legally and equitably entitled to its return.

93. It is against equity and good conscience to allow Defendants to retain that money.

94. AAMG has been damaged in an amount to be proven upon the trial of this matter, but believed to be no less than $2,261,744.10.

**WHEREFORE**, AAMG respectfully demands judgment as follows:

1. On the First Claim for Relief (Breach of Contract), judgment against defendant NSA in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

C018858/0201460/1404987.5

2. On the Second Claim for Relief (Conversion) judgment against all defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

3. On the Third Claim for Relief (Fraud), judgment against all defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

4. On the Fourth Claim for Relief (Breach of Fiduciary Duty), judgment against all defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

5. On the Fifth Claim for Relief (Negligence), judgment against all defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

6. On the Sixth Claim for Relief (Unjust Enrichment), judgment against all defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

7. On the Seventh Claim for Relief (Money Had and Received), judgment against all defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

8. An order temporarily and preliminarily enjoining and restraining the transfer of any assets held by the defendants pending final judgment in this action.

9. Any other relief that this Court deems just and proper, together with the costs, disbursements, and attorney's fees incurred in this action.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  New York, New York
        August 28, 2007

                                    BRYAN CAVE LLP

                                    _____
                                    By:  Noah M. Weissman (NW 8592)
                                         Omar A. Shakoor (OS 4913)
                                         1290 Avenue of the Americas
                                         New York, New York  10104
                                         (212) 541-2000

                                    *Attorneys for the Plaintiff*

C018858/0201460/1404987.5