UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ABN AMRO MORTGAGE GROUP, INC.,                :
                                              :
                         Plaintiff,           :   Case No. 07-CIV-7657
                                              :
   -against-                                  :
                                              :
NATIONAL SETTLEMENT AGENCY, INC.,             :
STEVEN M. LEFF, RACHEL M. LEFF and            :
RICHARD A. LEFF,                              :
                                              :
                         Defendants.          :
                                              :
------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ABN AMRO MORTGAGE GROUP, INC.'S MOTION FOR AN ORDER OF ATTACHMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

**BRYAN CAVE LLP**
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
*Attorneys for Plaintiff*

C018858/0201460/1405183.2

## PRELIMINARY STATEMENT

On August 21, 2007, defendant Steven Leff, the president of defendant National Settlement Agency, Inc. ("NSA"), was arrested and charged with violating 18 U.S.C. § 656, a criminal statute, for willfully misapplying banks deposits that were entrusted to his custody and care. In a signed statement provided to the Federal Bureau of Investigation ("FBI"), Steven Leff acknowledged that "on numerous occasions, he knowingly and willfully made unauthorized transfers of funds belonging to the banks held in NSA's escrow accounts. These funds were transferred to NSA's operating account without the knowledge or permission of the banks. Some of these funds were transferred to the defendant personally." See Exhibit B (Complaint and Affidavit in Support of Application for Arrest Warrant) to the accompanying Declaration of Omar Shakoor, dated August 28, 2007 ("Shakoor Declaration) at ¶ 5.

Plaintiff ABN AMRO Mortgage Group, Inc. ("AAMG") was one of those banks whose escrowed funds were taken by Steven Leff without authorization. As shown in the accompanying Affidavit of Lorie Miller, sworn to on August 28, 2007 ("Miller Affidavit"), AAMG wired funds totaling $2,261,744.10 to NSA escrow accounts to be held in trust and used to pay off prior loans and complete the closings of certain residential real estate mortgages, but NSA, Steven Leff, and Rachel Leff, NSA's chief executive officer, took those funds and put them to their own use and purpose without authorization from AAMG.

AAMG now moves by order to show cause against defendants NSA, Steven Leff, and Rachel Leff (collectively, "Defendants") for (i) an order of attachment, (ii) a temporary restraining order and preliminary injunction, and (iii) an order allowing expedited discovery. On August 6 and 8, 2007, a similar order to show cause, with temporary restraining order, was granted in favor of IndyMac Bank, F.S.B. ("IndyMac"), another bank whose escrowed funds were entrusted to NSA, by Judge Kimba Wood of this Court in a related case, IndyMac Bank,

2

F.S.B. v. NSA, et al., 07 Civ 6865 (LTS) (the "Related Case"), and on August 16, Judge Wood entered an order to attachment, preliminary injunction, and expedited third-party discovery against NSA and Steven Leff. See Shakoor Declaration, Exhibit C. On August 16, a similar order to show cause, with temporary restraining order, was granted in favor of IndyMac against Rachel Leff. See Shakoor Declaration, Exhibit C.

As demonstrated below, as the result of Defendants' actions, AAMG has been unable to discover the whereabouts of its funds, and the severe and irreparable injury it has suffered is likely to continue unless Defendants' misconduct is immediately enjoined. Accordingly, AAMG is entitled to the same sort of relief against the Defendants as IndyMac already has obtained: (1) a temporary restraining order and preliminary injunction preventing and restraining Defendants from further dissipating the assets of AAMG up to $2,661,746.90, plus interest, costs, disbursements, and fees; (2) an order of attachment of Defendants' assets; and (3) leave to conduct expedited discovery.

## STATEMENT OF FACTS

The pertinent facts are set forth in the Miller Affidavit and the Shakoor Declaration and their exhibits. The following is a summary of the facts underlying AAMG's claims in this lawsuit.

AAMG is in the business of originating and servicing residential mortgage loans. In the furtherance of closing certain residential mortgage loans from April through July of 2007, Defendant NSA agreed and undertook to act, and did act, as AAMG's closing agent with respect to seven such mortgage loans ("collectively, the "Mortgage Loans").

AAMG wired funds totaling $2,661,746.80 in trust to NSA's escrow accounts at the JP Morgan Chase Bank (the "Escrow Accounts") for the purpose of closing the Mortgage

Loans. However, AAMG's funds were taken by Defendants and put to their own use, purpose and interest, all without the authorization of AAMG. As a result, although checks were issues at the closings of the Mortgage Loans, there were insufficient funds to pay off the prior liens or make the other payments required in order to close any of the Mortgage Loans.

On August 21, Steven Leff was arrested and charged with violating 18 U.S.C. § 656. Steve Leff has admitted that, without authorization, he transferred escrowed funds received from banks to NSA's operating account and to himself.

Expedited discovery in the Related Case has revealed that Rachel Leff also transferred hundreds of thousands of dollars from NSA's Escrow Accounts to her personal bank account.

None of the AAMG Funds wired into NSA's Escrow Accounts have been used to pay off prior liens or complete the closing of the Mortgage Loans, as Defendants agreed and represented they would do.

## ARGUMENT

### POINT I

### AAMG HAS MET ALL OF THE REQUISITES FOR INJUNCTIVE RELIEF

The required showing for the issuance of a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65 are identical. AIM Int'l Trading, LLC v. Valcucine SpA, IBI LLC, 188 F. Supp. 2d 384, 386-87 (S.D.N.Y. 2002) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). The Second Circuit has held that a preliminary injunction should be granted where the moving party demonstrates: (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the moving party's favor.

4

NAACP, Inc. v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995). See also MONY Group, Inc. v. Highfields Capital Mgmt., L.P., 368 F.3d 138, 143 (2d Cir. 2004). As set forth below, AAMG has satisfied all of these requirements and therefore should be granted a temporary restraining order and preliminary injunction enjoining and restraining Defendants from further dissipating assets up to $2,261,744.10, plus interest, costs, disbursements, and fees.

### A.  AAMG Will Suffer Irreparable Harm

"The irreparable harm requirement . . . is satisfied 'where a party intends to frustrate any judgment on the merits by making it uncollectible.'" S.E.C. v. Ashbury Capital Partners, L.P., No. 00CV7898(RCC), 2001 WL 604044, at *3 (S.D.N.Y. May, 31, 2001) (quoting Pashaian v. Eccelston Props., Ltd., 88 F.3d 77, 87 (2d Cir. 1996)). Here, the irreparable harm requirement is satisfied because Steven Leff has acknowledged embezzling funds from NSA's escrow accounts, and has prevented AAMG from learning the whereabouts of the AAMG Funds by denying knowledge of their location. AAMG does not have the necessary documentation to determine the location of the funds on its own. If Defendants are permitted to continue to make unauthorized transfers of funds from NSA's escrow and other accounts, as well as from their own personal accounts, any judgment AAMG obtains will be uncollectible.

### B.  AAMG is Likely to Succeed on the Merits of Its Claims

AAMG has asserted claims against Defendants for (1) breach of contract; (2) conversion; (3) fraud; (4) breach of fiduciary duty; (5) negligence; (6) unjust enrichment; and (7) money had and received. AAMG is likely to succeed on the merits of these claims.

#### 1.  AAMG is Likely to Succeed on its Claim for Breach of Contract

AAMG and Defendant NSA had an implied-in-fact contract whereby Defendant NSA was to act as closing agent for the Mortgage Loans in exchange for a fee, disbursing the AAMG

Funds in accordance with AAMG's instructions. As evidenced by Steven Leff's statement to the FBI, Defendant NSA failed to disburse the AAMG Funds in accordance with AAMG's instructions. Accordingly, AAMG is likely to succeed on its breach of contract claim.

    2.    <u>AAMG is Likely to Succeed on its Claim for Conversion</u>

"Conversion is an unauthorized exercise of dominion and control over property by someone other than the owner, where such control interferes with and is in defiance of the superior possessory right of the owner or another person." <u>Miller v. Marchuska</u>, 31 A.D.3d 949, 819 N.Y.S.2d 591, 593 (3d Dep't 2006). Through their unauthorized transfers, Defendants took control and dominion of the AAMG Funds for their own personal use and interests. Because such control was in defiance of AAMG's superior possessory right, AAMG is likely to succeed on its claim for conversion.

    3.    <u>AAMG is Likely to Succeed on its Claim for Fraud</u>

To establish a claim of fraud, a plaintiff must demonstrate: (1) the representation of a material fact by the defendant; (2) the falsity of that representation; (3) knowledge by the defendant that the representation was false when made; (4) justifiable reliance by the plaintiff; and (5) resulting injury. <u>Pope v. Saget</u>, 29 A.D.3d 437, 441, 817 N.Y.S.2d 1, 3-4 (1st Dep't 2006). Here, Defendants represented that they would close the Mortgage Loans, and as evidenced above, that representation was fraudulent; Defendants had no intention to, and did not, close the Mortgage Loans. AAMG justifiably relied on Defendants' representation, and has suffered a resulting injury through its loss of the AAMG Funds.

    4.    <u>AAMG is Likely to Succeed on its Claim for Breach of Fiduciary Duty</u>

Defendants, by agreeing to act as closing agent for AAMG and receiving AAMG's wire of the AAMG Funds into the Escrow Accounts, acted as AAMG's fiduciary. By their failure to

disburse the AAMG Funds in accordance with AAMG's instructions at the closings for the Mortgage Loans, and instead using the AAMG Funds for their own personal use and interests, Defendants breached their fiduciary duty to AAMG. As a result, AAMG is likely to recover on its claim for breach of fiduciary duty.

     5.     <u>AAMG is Likely to Succeed on its Claim for Negligence</u>

To maintain a cause of action in negligence, Plaintiff must be able to prove the existence of a duty, breach and proximate cause. <u>Kenney v. City of New York</u>, 30 A.D.3d 261, 262, 817 N.Y.S.2d 264, 265 (1st Dep't 2006). Here, through the unauthorized transfers of the AAMG Funds from the Escrow Accounts, which are evidenced by Steven Leff's own admissions, Defendants have breached their duty of care to AAMG as its closing agent. Thus, AAMG is likely to succeed on its negligence claim.

     6.     <u>AAMG is Likely to Succeed on its Claim for Unjust Enrichment</u>

Under New York law, "[t]o state a cause of action for unjust enrichment, a plaintiff must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor." <u>Nakamura v. Fujii</u>, 253 A.D.2d 387, 390, 677 N.Y.S.2d 113, 116 (1st Dep't 1998). Here, rather than disburse the AAMG Funds at the closings of the respective Mortgage Loans as Defendants agreed and represented they would, Defendants used the AAMG Funds for their own personal use and interests. After having been conferred this benefit, Defendants have not compensated AAMG. Accordingly, AAMG is likely to succeed on its claim for unjust enrichment.

     7.     <u>AAMG is Likely to Succeed on its Claim for Money Had and Received</u>

Under New York law, an action for money had and received permits a plaintiff "to recover money which has come into the hands of the defendant 'impressed with a species of

trust' because under the circumstances it is 'against good conscience for the defendant to keep the money.'" Parsa v. State, 64 N.Y.2d 143, 148, 485 N.Y.S.2d 27-29-30 (1984) (citations omitted). "The remedy is available 'if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass.'" Id. (citations omitted). Here, AAMG is likely to succeed on its claim for money had and received because Defendants, who undertook to act as AAMG's closing agent, were impressed with a species of trust, and made transfers of the AAMG Funds from the Escrow Accounts for their own uses and benefit without authorization.

C. **The Balance of the Equities Tips Decidedly in AAMG's Favor**

The substantial likelihood of AAMG's ultimate success on the merits, and the immediate and irreparable harm to which AAMG would be subjected, weigh heavily in favor of the entry of a temporary restraining order and preliminary injunction. Those harms are not outweighed by injury to Defendants that might result from an injunction. A temporary restraining order and preliminary injunction would simply require Defendants not to transfer or further secrete their assets up to an amount of $2,261,744.10. In contrast, if injunctive relief is not granted, there is a significant risk that plaintiff will be irreparably harmed through the inability to collect on the substantial judgment it is likely to recover.

## POINT II

## AAMG IS ENTITLED TO AN ORDER OF ATTACHMENT

Pursuant to Fed. R. Civ. P. 64, "all remedies providing for seizure of . . . property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held."

To obtain an order of attachment under New York law, a plaintiff must show that: (1) there is a cause of action; (2) it is probable that the plaintiff will succeed on the merits; (3) one or more grounds for attachment provided in C.P.L.R. § 6201 exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. C.P.L.R. § 6212(a). Here, the prerequisites for attachment are present.

### A.     AAMG has a Cause of Action Against Defendants For Money Damages

Based on the Miller Affidavit, the Shakoor Declaration, and as set forth above, AAMG has multiple causes of action against Defendants for money damages.

### B.     It is Probable that AAMG will Succeed on the Merits

As set forth above, AAMG is likely to recover on its causes of action for breach of contract, conversion, fraud, breach of fiduciary duty, negligence, unjust enrichment, and money had and received. Because Defendants made unauthorized transfers of the AAMG Funds for their own personal use and interests, AAMG has made a sufficient showing of likelihood of success for an order of attachment. See Mineola Ford Sales Ltd. v. Rapp, 242 A.D.2d 371, 371-372, 661 N.Y.S.2d 281, 281-82 (2d Dep't 1997).

### C.     Grounds for Attachment under C.P.L.R. § 6201(3) Exist with respect to All Defendants, and under C.P.L.R. § 6201(1) with respect to Rachel Leff

Section 6201 of the C.P.L.R. provides that there are grounds for an attachment where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." C.P.L.R. § 6201(3). Here, AAMG wired the AAMG Funds to the Escrow Accounts after relying on Defendants' representation that they would act as closing agent for the Mortgage Loans and disburse the AAMG Funds at the respective mortgage closings. As acknowledged by Steven Leff in his

9

statement to the FBI, funds held in NSA's Escrow Accounts, including some or all of the AAMG Funds, have been secreted. The assets of Defendants should be attached to prevent further secretion of the AAMG Funds, and to prevent Defendants from frustrating any judgment that should be entered against them.

Grounds for an attachment also exist where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state" C.P.L.R. § 6201(3). Here, it appears that Rachel Leff currently resides in the State of Florida. Shakoor Declaration, ¶ 8, and Exhibit D. Thus, grounds for an attachment of her assets alternatively exist under § 6201(1).

### D. The Amount Demanded from Defendants Exceeds All Counterclaims Known to AAMG

As averred in the Miller Affidavit, the amount demanded from Defendants exceeds all known counterclaims against AAMG.

## POINT III

## AAMG IS ENTITLED TO EXPEDITED DISCOVERY

AAMG also requests leave to take expedited discovery in this case. Expedited discovery will hasten the trial of this action and reduce the likelihood of further irreparable harm to plaintiff. Specifically, AAMG seeks discovery from JP Morgan Chase Bank and its related banking units with respect to the Escrow Accounts into which the AAMG Funds were wired, as well as the personal bank account of Rachel Leff, to which transfers were made from the Escrow Accounts. AAMG also seeks additional discovery regarding Defendants' assets.

## **CONCLUSION**

For all the reasons discussed above, AAMG has established all of the requisites for a temporary restraining order, a preliminary injunction, an order of attachment, and expedited discovery.

Dated:   New York, New York
         August 28, 2007

                              BRYAN CAVE LLP

By:   Noah M. Weissman (NW 8592)
      Omar A. Shakoor (OS 4913)
      1290 Avenue of the Americas
      New York, New York  10104
      (212) 541-2000

*Attorneys for the Plaintiff*

C018858/0201460/1405183.2