Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABN AMRO MORTGAGE GROUP, INC.,

                       Plaintiff,

- *against* -

NATIONAL SETTLEMENT AGENCY, INC.,
STEVEN M. LEFF, RACHEL M. LEFF AND
RICHARD A. LEFF,

                       Defendants.

Case No. 07-CIV-7657

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff ABN AMRO Mortgage Group, Inc., by and through its attorneys Cahill Gordon & Reindel LLP, complains and alleges as follows:

## I.  PRELIMINARY STATEMENT

1.    This is an action for damages resulting from Defendants' breach of contract, conversion, fraud, breach of fiduciary duty, and negligence relating to their role as closing agent for plaintiff on certain residential mortgages.

## II.  PARTIES

2.    At all relevant times, plaintiff ABN AMRO Mortgage Group, Inc. ("AAMG") was a Delaware corporation with its principal place of business at 6300 InterFirst Drive, Ann Arbor, Michigan.

3.    At all relevant times, defendant National Settlement Agency, Inc. ("NSA") was a New York corporation which, on information and belief, maintained a principal place of business at 404 Park Avenue South, 5th Floor, New York, New York.

4.    At all relevant times, defendant Steven M. Leff ("Steven Leff") was an individual who, on information and belief, was the president of NSA and was and is a citizen of the State of New York.

5.    At all relevant times, defendant Rachel M. Leff was an individual who, on information and belief, was the chief executive officer of NSA and was and is a citizen of the State of New York who now resides in Florida.

6.    At all relevant times, defendant Richard A. Leff was an individual who, on information and belief, was an attorney licensed to practice law in the State of New York, closed mortgage loans for NSA and was and is a citizen of the State of New Jersey.

## III. JURISDICTION AND VENUE

7.    Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum of seventy-five thousand dollars, exclusive of interest and costs.

8.    Venue in this court is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this District.

## IV. FACTS

9.    AAMG was in the business of originating and servicing residential mortgage loans.

10.    In the furtherance of closing certain mortgage loans made by AAMG from April through July of 2007, Defendants undertook to act, and acted, as AAMG's closing agent.

11.    Defendants, acting as AAMG's closing agent, had the legal obligation, at the time of the closing of each mortgage, to disburse to various payees, according to AAMG's closing instructions, the specific funds that AAMG had wired in trust to one of NSA's accounts at the JP Morgan Chase Bank: "National Settlement Agency, Inc., Attorney Escrow Funding Account" Account No. 904613917, ABA No. 021000021; and "National Settlement Agency, Inc., Attorney Funding Account - Gen," Account No. 987096757765, ABA No. 021000021, among others (collectively, the "Escrow Accounts").

12.    On information and belief, from April through July of 2007, Defendants, without authorization, took for their own use and interest and converted or allowed to be converted approximately $2.26 million of AAMG's funds that had been wired into one of NSA's Escrow Accounts for Defendants to disburse or cause to be disbursed to various designated payees at several mortgage closings, as more fully described below.

13.    At the end of July 2007, Steven Leff told AAMG that funds AAMG had wired into NSA's Escrow Accounts had been embezzled, specifically affecting the closing of the mortgage loans relating to the Kramer Mortgage (as described below), the Nelson Mortgage (as described below), and the Alcantara Mortgages (as described below).  He further said that he did not know where the funds were.

14.    In or about August 2007, Steven Leff provided a written statement (the "Statement") to the Federal Bureau of Investigation ("FBI") acknowledging that, on numerous occasions, he had knowingly and willfully made unauthorized transfers of funds that were held in NSA's

- 3 -

Escrow Accounts and that belonged to banks on behalf of which NSA acted as settlement agent for real estate closings. The Statement acknowledged that the funds were transferred to NSA's operating account and/or to Steven Leff personally.

15.    On August 21, 2007, Steven Leff was arrested by Special Agents of the FBI and charged by the United States of America with violating 18 U.S.C. § 656, a criminal statute, by willfully misapplying bank funds placed into NSA Escrow Accounts to NSA's and his own uses, purposes and interest, all without authorization. He was released on a $1 million bond.

16.    As closing agent for AAMG, Defendants undertook to perform and did perform tasks that would constitute the unauthorized practice of law pursuant to New York State Judiciary Law § 478 if performed without the supervision of a lawyer.

17.    Defendant Steven M. Leff is a former lawyer whose New York State Bar membership was suspended in 2000 and has not been renewed. Thus, he could not be the person who satisfied the requirements of New York State Judiciary Law § 478 as to NSA and the tasks it performed on behalf of AAMG.

18.    Defendant Richard A. Leff is a lawyer who has been a member of the New York State Bar since 1992. Thus, he could be the person who satisfied the requirements of New York State Judiciary Law § 478 as to NSA and the tasks it performed on behalf of AAMG.

19.    On or about June 2007, Defendants represented to AAMG that defendant Richard A. Leff would supervise the activities of NSA as head attorney of NSA. But for these

- 4 -

representations, upon which AAMG reasonably relied, AAMG would not have agreed to have NSA act as its closing agent.

20.    On information and belief, defendant Richard A. Leff acted as head attorney of NSA from April 2007 through July 2007.

21.    On information and belief, defendant Richard A. Leff was aware that NSA was providing services to AAMG that required the oversight of an attorney.

22.    On information and belief, defendant Richard A. Leff did not intend at the time of the representations described in paragraph 19 to supervise the activities of NSA as required by New York State Judiciary Law § 478.

### 1. The Kramer Mortgage (Loan No. 655368628)

23.    AAMG agreed to make a loan to Kenneth and Nicole Kramer ("Kramer") in the amount of $413,000, to be secured by a first mortgage (the "Kramer Mortgage") on the real property located at 94-32 Magnolia Court, Unit 3B, Ozone Park, New York 11417 (the "Kramer Property").

24.    Defendants agreed to act as the closing agents for the Kramer Mortgage.

25.    The closing for the Kramer Mortgage transaction occurred on or about April 16, 2007.

26.     AAMG wired $413,275.05, the net amount to be disbursed at the closing, into one of

NSA's Escrow Accounts and provided Defendants with specific instructions for its disbursement

to various payees.

27.     Contrary to AAMG's closing instructions, the prior mortgagee of the Kramer Property was

not paid and is still owed an amount of at least $418,961.59.

28.     Contrary to AAMG's closing instructions, Defendants did not perfect a first lien on the

Kramer Property in favor of AAMG, and AAMG is second in lien position to the prior mortgagee of

the Kramer Property.

29.     On information and belief, Defendants took control and dominion over the $413,275.05

wired into the NSA Escrow Account and, without authorization, used those funds for their own

personal use and interests instead of disbursing this money as AAMG had directed.

2. The Nelson Mortgage (Loan No. 656243674)

30.     AAMG agreed to make a loan to Glenn W. Nelson and Kerri R. Lubell-Nelson

("Nelson") in the amount of $417,000, to be secured by a first mortgage (the "Nelson

Mortgage") on the real property located at 95 Upper Lakeshore Drive, Katonah, New York 10536

(the "Nelson Property").

31.     Defendants agreed to act as the closing agents for the Nelson Mortgage.

32.     The closing for the Nelson Mortgage transaction occurred on or about June 18, 2007.

33.    AAMG wired funds totaling $420,878.54 into one of NSA's Escrow Accounts and provided Defendants with specific instructions for its disbursement to various payees.

34.    Contrary to AAMG's disbursement instructions, the prior first mortgagee of the Nelson Property was not paid and is still owed an amount of at least $179,078.25.  Chase Bank, as the prior second mortgagee of the Nelson Property, was paid $201,833.00, consistent with AAMG's disbursement instructions.

35.    Contrary to AAMG's closing instructions, Defendants did not perfect a first lien on the Nelson Property in favor of AAMG, and AAMG is second in lien position to the prior first mortgagee of the Nelson Property.

36.    On information and belief, Defendants took control and dominion over the balance of $219,045.54 wired into the NSA Escrow Account and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

### 3. The Alcantara Mortgages (Loan Nos. 656123577 and 656203609)

37.    AAMG agreed to make two loans to Carlos and Rosa Alcantara (the "Alcantaras"), to be secured by a first mortgage on the real property located at 44 Autumn Circle, Yonkers, New York 10703 (the "Alcantara Property").  The amount of the first loan was $500,000.00 (the "First Alcantara Mortgage"). The amount of the second loan was $62,500.00 (the "Second Alcantara Mortgage") (collectively, the "Alcantara Mortgages").

38.    Defendants agreed to act as the closing agents for the Alcantara Mortgages.

39.    The closing for the Alcantara Mortgages occurred on or about July 6, 2007.

40.    AAMG wired the net amounts to be disbursed at the closing for each of the loans, totaling $498,671.02 for the First Alcantara Mortgage and $63,071.39 for the Second Alcantara Mortgage, into one of NSA's Escrow Accounts and provided Defendants with specific instructions for its disbursement to various payees.

41.    Contrary to AAMG's closing instructions, the prior first mortgagee of the Alcantara Property was not paid and is still owed a payoff amount of at least $440,079.67, and the prior second mortgagee of the Alcantara Property was not paid and is still owed a payoff amount of at least $109,206.01.

42.    Contrary to AAMG's closing instructions, Defendants did not perfect a first lien (or any lien) on the Alcantara Property in favor of AAMG; AAMG has no lien on the Alcantara Property, and the first and second prior mortgagees retain their first and second liens on the Alcantara property.

43.    On information and belief, Defendants took control and dominion over the $561,742.41 that was wired for the Alcantara Mortgages and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

4. The Carnevali Mortgage (Loan No. 6563122144)

44.    AAMG agreed to make a loan to Marc Carnevali ("Carnevali") in the amount of $584,000.00, to be secured by a first mortgage (the "Carnevali Mortgage") on the real property located at 210 Lafayette Street, Unit 6E, New York, New York 10012 (the "Carnevali Property").

- 8 -

45.    Defendants agreed to act as the closing agents for the Carnevali Mortgage.

46.    The closing for the Carnevali Mortgage transaction occurred on or about July 6, 2007.

47.    AAMG wired $582,096.36, the net amount to be disbursed at the closing, to NSA Account No. 904613917 and provided Defendants with specific instructions for its disbursement to various payees.

48.    Contrary to AAMG's closing instructions, the title agency for the Carnevali Mortgage was not paid from the funds wired to NSA by AAMG.  A check issued by NSA to the title agency for the Carnevali Mortgage was returned for insufficient funds.  AAMG subsequently paid the title agency for the Carnevali Mortgage from its own funds.

49.    Contrary to AAMG's closing instructions, on information and belief, the prior mortgagee of the Carnevali Property was not paid and is still owed a payoff amount of at least $561,151.90.

50.    Contrary to AAMG's closing instructions, Defendants did not perfect a first lien on the Carnevali Property in favor of AAMG, and AAMG is second in lien position to the prior mortgagee of the Carnevali Property.

51.    On information and belief, Defendants took control and dominion over the $582,096.36 wired into the NSA Account and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

### 5. The Schnatter Mortgage (Loan No. 656550325)

- 9 -

52.     AAMG agreed to make a loan to Scott and Traci Schnatter ("Schnatter") in the amount of $450,000.00, to be secured by a first mortgage (the "Schnatter Mortgage") on the real property located at 323 Charles Avenue, Massapequa, New York 11762 (the "Schnatter Property").

53.     Defendants agreed to act as the closing agents for the Schnatter Mortgage.

54.     On or about July 13, 2007, AAMG wired $446,334.82, the net amount to be disbursed at the closing, to NSA Account No. 987096757765 and provided Defendants with specific instructions for its disbursement to various payees.

55.     Contrary to AAMG's closing instructions, the title agency for the Schnatter Mortgage was not paid from the funds wired to NSA by AAMG. A check issued by NSA to the title agency for the Schnatter Mortgage was returned for insufficient funds.

56.     On information and belief, contrary to AAMG's closing instructions, the seller of the Schnatter Property was not paid and is still owed a payoff amount of at least $501,727.00.

57.     On information and belief, Defendants took control and dominion over the $446,334.82 wired into the NSA Account and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

6. The De Carlo Mortgage (Loan No. 656597616)

58.     AAMG agreed to make a loan to Joseph and Jennifer De Carlo ("De Carlo") in the amount of $300,000, to be secured by a first mortgage (the "De Carlo Mortgage") on the real

- 10 -

property located at 2 Millburn Road, South Setauket, New York 11720 (the "De Carlo Property").

59.    Defendants agreed to act as the closing agents for the De Carlo Mortgage.

60.    On or about July 24, 2007 AAMG wired funds totaling $300,491.25 for the closing to Account No. 987096757765 and provided Defendants with specific instructions for its disbursement to various payees.

61.    The closing for the De Carlo Mortgage transaction occurred on July 25, 2007, and amounts totaling $39,250.27 directed to various payees as specified in AAMG's closing instructions were not paid out of the funds wired by AAMG.

62.    Checks issued by NSA totaling $39,250.27 related to the De Carlo Mortgage were returned for lack of sufficient funds.  AAMG issued checks totaling $39,250.27 to the payees of these checks from its own funds.

63.    On information and belief, Defendants took control and dominion over $39,250.00 of the wired funds and, without authorization, used those funds for their own personal use and interests instead of disbursing this money as AAMG had directed.

64.    Contrary to AAMG's closing instructions, Defendants did not perfect a first lien (or any lien) on the De Carlo Property in favor of AAMG; AAMG has no lien on the De Carlo Property, and the first and second prior mortgagees retain their first and second liens on the De Carlo property.

65.    The De Carlo mortgage was a purchase money mortgage.  Contrary to AAMG's closing

instructions, the mortgagor named on the De Carlo Property liens is not De Carlo but the parties who

sold the De Carlo Property to De Carlo.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Breach of Contract)

66.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65,

above.

67.    Defendant NSA had an implied-in-fact contract with AAMG whereby defendant NSA

would act as the closing agents for AAMG at and in connection with the above specified closings in

exchange for a fee.

68.    As part of their contract with AAMG, defendant NSA agreed to hold in trust the funds

that AAMG wired into one of the Escrow Accounts, to disburse those funds only in accordance

with AAMG's instructions and to perfect a first lien on each property in favor of AAMG.

69.    By failing to disburse as AAMG directed, failing to perfect first liens in favor of

AAMG and converting funds wired to into one of the Escrow Accounts by AAMG, defendant

NSA breached their contract with AAMG.

70.    By reason of this breach, AAMG has been damaged in a sum to be proven upon the trial

of this matter, but believed to be no less than $2,261,744.10.

- 12 -

<u>SECOND CLAIM FOR RELIEF</u>

(Conversion)

71.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65, above.

72.     AAMG entrusted funds to Defendants for the express and sole purpose of disbursing those funds pursuant to AAMG's instructions in connection with the above-described mortgages.

73.     Rather than the funds being disbursed to the payees designated by AAMG, Defendants, on information and belief, individually and jointly exercised dominion and control over AAMG's funds by using those funds for their own purposes and interests.

74.     Defendants had no legal, equitable, or other right to use the funds for anything other than disbursement in connection with the mortgages in accordance with AAMG's instructions.

75.     As a result of this conversion, AAMG has been damaged in a sum to be proven upon the trial of this matter, but believed to be no less than $2,261,744.10.

<u>THIRD CLAIM FOR RELIEF</u>

(Fraud)

76.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65 above.

77.    On information and belief, Defendants agreed to conduct the above-described mortgage closings for AAMG while having no present intention to actually close the mortgages according to AAMG's instructions.

78.    On information and belief, Defendants thereby knowingly and intentionally misrepresented to AAMG that they would disburse funds as instructed and perfect first liens in favor of AAMG.

79.    On information and belief, defendant Richard A. Leff, with the knowledge and assent of the other defendants, agreed to serve as head attorney of NSA and represented that his actions in that capacity would satisfy the requirements of New York State Judiciary Law § 478 while having no present intention actually to supervise those tasks performed on behalf of AAMG that required attorney supervision.

80.    On information and belief, defendants thereby knowingly and intentionally misrepresented to AAMG that Richard A. Leff would supervise those tasks performed on behalf of AAMG that required attorney supervision.

81.    Defendants made these misrepresentations with the intent to induce AAMG into wiring funds into one of the Escrow Accounts so that they could convert those funds to their own uses, purposes, and interests.

82.    Reasonably relying upon these material misrepresentations, AAMG wired funds into one of NSA's Escrow Accounts to be disbursed by Defendants at the mortgage closings pursuant to AAMG's instructions.

- 14 -

83.    On information and belief, Defendants, as was their intention when they agreed to act as a closing agent for AAMG, did not disburse the funds according to AAMG's instructions and did not perfect first liens in favor of AAMG according to those instructions, and thereby damaged AAMG in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

<u>FOURTH CLAIM FOR RELIEF</u>

(Breach of Fiduciary Duty)

84.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65 above.

85.    Defendants, having undertaken to act, and having acted, as AAMG's closing agents in connection with the above-described mortgages, owed a fiduciary duty to AAMG to perform their closing functions with the utmost degree of care, skill, and diligence.

86.    Defendants breached their fiduciary duty by converting the funds that had been wired in trust into one of the Escrow Accounts.

87.    Defendants breached their fiduciary duty by drawing checks which were dishonored, or checks that were never delivered to the designated payees, and failing to draw only checks upon good funds.

88.    Defendants breached their fiduciary duty by failing to supervise those under their control who contributed to AAMG's losses.

- 15 -

89.    Defendants breached their fiduciary duty by failing to perfect first liens in favor of AAMG.

90.    These breaches of fiduciary duty were the proximate cause of AAMG's losses, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

## FIFTH CLAIM FOR RELIEF

### (Negligence)

91.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65 above.

92.    Defendants jointly and severally owed a duty to AAMG to ensure that the funds entrusted to Defendants for disbursement at the mortgage closings described herein were in fact present in the accounts upon which checks were drawn, to ensure that all necessary checks were drawn and delivered to the designated payees at or immediately after closing and to ensure that a first lien in favor of AAMG was perfected.

93.    Defendants breached this duty by not ensuring that sufficient funds were available in NSA's Escrow Accounts to cover the checks drawn by Defendants at the closings described herein, by failing to deliver checks to the designated payees and by failing to perfect first liens in favor of AAMG.

- 16 -

94.     As a proximate cause of this breach of the duty of care, AAMG has been damaged in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

## SIXTH CLAIM FOR RELIEF

### (Professional Negligence as against Richard A. Leff)

95.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65 above.

96.     In serving as head attorney of NSA, defendant Richard A. Leff owed a duty to AAMG to supervise those tasks performed on behalf of AAMG that required attorney supervision.

97.     Defendant Richard A. Leff breached this duty by not supervising those tasks performed on behalf of AAMG that required attorney supervision.

98.     As a proximate result of this breach of the duty of care, AAMG has been damaged in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

99.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65 above.

- 17 -

100. On information and belief, Defendants wrongfully benefited from AAMG's wiring of mortgage disbursement funds to them by enjoying portions of those funds for their own personal uses, purposes, and interests.

101. None of the Defendants were the intended beneficiaries of AAMG's mortgage disbursement funds.

102. In equity and good conscience, Defendants must return AAMG's funds.

103. As a result of this unjust enrichment, AAMG is entitled to restitution in an amount to be proven upon the trial of this matter, but believed to be no less than $2,261,744.10.

## EIGHTH CLAIM FOR RELIEF

(Money Had and Received Against all Defendants)

104. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-65 above.

105. Defendants received from AAMG an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

106. That money should have been paid to AAMG's designated beneficiaries.

107. Not having been paid to AAMG's designated beneficiaries, that money still belongs to AAMG and AAMG is legally and equitably entitled to its return.

108. It is against equity and good conscience to allow Defendants to retain that money.

109.    AAMG has entitled to restitution in an amount to be proven upon the trial of this matter, but believed to be no less than $2,261,744.10.

**WHEREFORE,** AAMG respectfully demands judgment as follows:

1.    On the First Claim for Relief (Breach of Contract), judgment against defendant NSA in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

2.    On the Second Claim for Relief (Conversion) judgment against all Defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

3.    On the Third Claim for Relief (Fraud), judgment against all Defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

4.    On the Fourth Claim for Relief (Breach of Fiduciary Duty), judgment against all Defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

5.    On the Fifth Claim for Relief (Negligence), judgment against all Defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

6.    On the Sixth Claim for Relief (Professional Negligence as against defendant Richard A. Leff, judgment against Richard A. Leff in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

7.    On the Seventh Claim for Relief (Unjust Enrichment), judgment against all Defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

8.    On the Eighth Claim for Relief (Money Had and Received), judgment against all Defendants, jointly and severally, in an amount to be determined upon the trial of this matter, but believed to be no less than $2,261,744.10.

9.    An order temporarily and preliminarily enjoining and restraining the transfer of any assets held by the Defendants pending final judgment in this action.

10.    Any other relief that this Court deems just and proper, together with the costs, disbursements, and attorney's fees incurred in this action.

JURY DEMAND

Plaintiff demands a trial by jury of those issues properly tried by a jury.

Dated: New York, New York
           September 12, 2007

                                           CAHILL GORDON & REINDEL LLP
                                           By: _____
                                               Thomas J. Kavaler
                                               David N. Kelley
                                               80 Pine Street
                                               New York, New York   10005
                                               (212) 701-3000

                                           *Attorneys for Plaintiff*

- 21 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 13, 2007, I served a true and correct copy of the annexed Amended Complaint on the following via federal express, next business day delivery:

National Settlement Agency, Inc.
c/o Richard A. Leff, Esq., as General Counsel
10 Park Road
Short Hills, NJ  07078

Michael Soshnick, Esq.
190 Willis Avenue, Suite 112
Mineola, New York  11501

Lawrence Morrison, Esq.
220 East 72nd Street, 25th Floor
New York, New York  10021

Jonathan B. Bruno, Esq.
Kaufman Borgeest & Ryan LLP
9 Park Avenue-19th Fl
New York, NY 10016

Maura A. McLoughlin