**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ABN AMRO MORTGAGE GROUP, INC.,

                                     Plaintiff,

       *- against -*

NATIONAL SETTLEMENT AGENCY, INC.,
STEVEN M. LEFF, RACHEL M. LEFF AND
RICHARD A. LEFF,

                                 Defendants.

Case No. 07-CIV-7657

---

# MEMORANDUM OF LAW IN SUPPORT
# OF PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE
# WHY AN ORDER OF CIVIL CONTEMPT SHOULD NOT ISSUE
# AS AGAINST DEFENDANT RACHEL M. LEFF

Thomas J. Kavaler
David N. Kelley
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

*Attorneys for Plaintiffs ABN AMRO Mortgage
Group, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABN AMRO MORTGAGE GROUP, INC.,

                                    Plaintiff,

        - against -

NATIONAL SETTLEMENT AGENCY, INC.,
STEVEN M. LEFF, RACHEL M. LEFF AND
RICHARD A. LEFF,

                                    Defendants.

Case No. 07-CIV-7657

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S
MOTION FOR AN ORDER TO
SHOW CAUSE WHY AN ORDER
OF CIVIL CONTEMPT SHOULD
NOT ISSUE AS AGAINST
DEFENDANT RACHEL M. LEFF**

Plaintiff ABN AMRO Mortgage Group, Inc. ("AAMG") respectfully submits this Memorandum of Law in support of its motion for an order to show cause why an order of civil contempt should not issue against Defendant Rachel M. Leff.

On September 10, 2007, the Honorable Laura Taylor Swain, United States District Judge for the Southern District of New York, entered an order of attachment and preliminary injunction as against Rachel M. Leff (the "Order"). The Order, *inter alia*, ordered Defendant Rachel M. Leff:

> pursuant to Fed. R. Civ. P. 64 and C.P.L.R. § 6220, on or before September 21, 2007, Defendant Rachel M. Leff shall provide counsel to Plaintiff a sworn affidavit (1) enumerating in detail all of Defendant Rachel M. Leff's assets, including each and every bank account, investment interest, investment account, investment, commercial paper, parcel of property, motor vehicle, watercraft, or other personal property of $10,000 of value or more, whether held personally or in trust, and the location and garnishee of each and (2) listing all persons, including accountants and financial advisors, with personal knowledge of any Defendant's assets and finances.

Defendant Rachel M. Leff was present at the hearing when the Order was announced and was properly served with the Order via her attorney, and thus was on notice of the September 21, 2007 deadline for delivery of the affidavit described above (the "Affidavit of Assets"). Plaintiff

and its counsel have not received the Affidavit of Assets. Indeed, Plaintiff and its counsel have received no communication from Defendant Rachel M. Leff, or her counsel.

Mrs. Leff has admitted that as recently as July or August 2007 she was a participant in the transfer of assets away from Mr. Leff, who has admitted to massive and intentional misappropriation of funds. Mrs. Leff's purported ignorance in this participation is supported only by her own say-so. Given Defendant's failure to provide Plaintiff with the Affidavit of Assets, in clear violation of the Court's Order, it is by no means clear that Mrs. Leff has not been the recipient of further transfers from her husband, in violation of this Court's preliminary injunction. Defendant's possible complicity in her husband's massive embezzlement and her proven willingness to violate Court orders make it imperative that the Court take this opportunity to put in place safeguards against her participating in any activity that would diminish the assets of her or her husband that are available for judgment.

For these reasons, Plaintiff AAMG respectfully requests that this Court hold Defendant Rachel M. Leff to be in civil contempt, and requests the following sanctions to remedy that contempt:

(a)     An order that Defendant Rachel M. Leff repatriate to the state of New York all of her major assets, defined to include:

- all cash or other liquid assets,

- all bank, brokerage and investment accounts held directly or indirectly, personally or in trust

- all business and investment interests held directly or indirectly, personally or in trust

- all personalty originally purchased for $1000 or more or having an estimated resale value of $500 or more.

All personalty shall be shipped directly to the U.S. Marshall for the Southern District of New York to be held pending judgment in this case.

(b)     An order that Defendant Rachel M. Leff shall, until judgment is rendered in this case or this order is revoked, provide to Plaintiff's counsel on or before the

-3-

tenth day of each calendar month an account of her income and expenses and transfers of any kind for the prior calendar month, including any income, expenses, transfers of assets or gifts-in-kind of $50 or greater value. Income or expenses or transfers from or to any given person on any given day shall be aggregated for the purposes of determining whether they constitute one or multiple items. Each statement shall be signed by Defendant Rachel M. Leff and notarized.

(c)    An order that Defendant Rachel M. Leff shall provide to Plaintiff's counsel on or before _____, 2007

- all bank account and credit card statements from February 2007 to the present for cards that she used and/or accounts on which she had any signing authority from February 2007 to the present,

- all income, expenditures and transfers, including in-kind transfers, of value in excess of $1000, made from February 2007 to the present. Income or expenses or transfers for any given calendar week (Sunday to Saturday) shall be aggregated for the purposes of determining whether they constitute one or many transfers.

## STATEMENT OF FACTS[1]

From April 2007 to August 2007, Defendant National Settlement Agency, Inc. ("NSA") served as closing agent on several mortgages for AAMG, which was a mortgage lender. According to the company's state registration documents, defendant Rachel M. Leff was the chief executive officer of NSA. In its role as closing agent, NSA held various funds of AAMG in various escrow accounts (the "Escrow Accounts") pending closing. When it became apparent that Defendants had misappropriated certain of Plaintiff's funds from the Escrow Accounts, Plaintiff commenced this action to stop the ongoing thefts and to recover, to the extent possible, the stolen funds.

---

[1]    The facts summarized herein are drawn from the Amended Complaint filed September 14, 2007 and the September 25, 2007 Declaration of David N. Kelley ("Kelley Decl.") annexed hereto, and the exhibits annexed thereto ("Kelley Ex.").

-4-

On September 10, 2007, Judge Swain entered the Order (Kelley Ex. A) that Plaintiff seeks to enforce by this motion. The Order (a) ordered United States Marshals to attach the assets of Defendant Rachel M. Leff, (b) further ordered that:

> pursuant to Fed. R. Civ. P. 64 and C.P.L.R. § 6220, on or before September 21, 2007 Defendant Rachel M. Leff shall provide counsel to Plaintiff a sworn affidavit (1) enumerating in detail all of Defendant Rachel M. Leff's assets, including each and every bank account, investment interest, investment account, investment, commercial paper, parcel of property, motor vehicle, watercraft, or other personal property of $10,000 of value or more, whether held personally or in trust, and the location and garnishee of each and (2) listing all persons, including accountants and financial advisors, with personal knowledge of any Defendant's assets and finances,

and (c) further ordered that Rachel M. Leff:

> acting in her personal capacity or as custodian or trustee, and Rachel M. Leff's garnishees, officers, directors, partners, affiliates, agents, employees, assigns, and any entities or individuals acting on their behalf, are restrained and enjoined from directly or indirectly secreting, transferring, selling, alienating, concealing, encumbering, or otherwise dissipating any asset of any of the Defendants in this action, or paying any debt owed by Defendant Rachel M. Leff, excluding her ordinary and usual living and business expenses.

It is at least the order enumerated (b) above that Defendant Rachel M. Leff has flouted in failing to deliver to Plaintiff's counsel (or Plaintiff, or, to Plaintiff's knowledge, anyone else) the Affidavit of Assets.

## ARGUMENT

## I.

## THIS COURT SHOULD HOLD DEFENDANT RACHEL M. LEFF IN CONTEMPT OF THE ORDER

In this Circuit, the standard for finding a party in civil contempt of court is well established. A party may be held in civil contempt for failure to comply with a court order when (1) the order being enforced is clear and unambiguous; (2) proof of non-compliance is clear and

convincing, and (3) the party charged with contempt has not been reasonably diligent and energetic in attempting to accomplish what was ordered. *See, e.g., Paramedics Electromedicina Comercial, Ltda.* v. *GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir. 2004); *Nat'l Basketball Ass'n* v. *Design Management Consultants, Inc.,* 289 F. Supp. 2d 373, 376 (S.D.N.Y. 2003); *King* v. *Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995); *Powell* v. *Ward,* 643 F.2d 924, 931 (2d Cir.), *cert. denied,* 454 U.S. 832 (1981).

It is not necessary to show that the violation of the order was willful, but rather simply that the party charged with contempt was not reasonably diligent in attempting to comply with the order. *See, e.g., Paramedics Electromedicina Comercial, Ltda,* 369 F.3d 645, 655; *McComb* v. *Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt. . . . Since the purpose is remedial, it matters not with what intent the Defendant did the prohibited act."). Here, there is a clear and unambiguous order that Defendant clearly has violated and continues to violate. A statement of assets is not a complicated thing to produce: presumably, Mrs. Leff has some idea of what various bank accounts and real and personal property of value in excess of $10,000 she owns; furthermore, she has had over a week to come up with some kind of response. It is therefore hard to see how Mrs. Leff has been "reasonably diligent and energetic" in attempting to comply with the Court's order.

### A.    *The Order Was Clear and Unambiguous*

To satisfy the requirement that an order be clear and unambiguous, the order "must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" *New York State Nat'l Org. for Women* v. *Terry,* 886 F.2d 1339, 1352 (2d Cir. 1989), *cert. denied,* 495 U.S. 947 (1990) (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d. Cir. 1985)). However, a party cannot avoid contempt "by some literal or hypertechnical reading of an order. It is the spirit and purpose of an injunction, not merely its precise words, that must

be obeyed." *National Research Bureau, Inc.* v. *Kucker*, 481 F. Supp. 612, 615 (S.D.N.Y. 1979); *see also Drywall Tapers and Pointers of Greater New York, Local 1974 of I.B .P.A.T.* v. *Local 530 of Operative Plasterers' and Cement Masons' Intern. Ass'n*, 2002 WL 31641597 (E.D.N.Y. 2002).

In this case, the Order issued by Judge Swain could not have been more explicit. Again, it stated:

> Defendant Rachel M. Leff shall provide counsel to Plaintiff a sworn affidavit (1) enumerating in detail all of Defendant Rachel M. Leff's assets, including each and every bank account, investment interest, investment account, investment, commercial paper, parcel of property, motor vehicle, watercraft, or other personal property of $10,000 of value or more, whether held personally or in trust, and the location and garnishee of each and (2) listing all persons, including accountants and financial advisors, with personal knowledge of any Defendant's assets and finances.

The clear point of the order was for Mrs. Leff to tell Plaintiff everything she could about her assets, so that the United States Marshals could attach these assets and prevent Mrs. Leff from "secreting, transferring, selling, alienating, concealing, encumbering, or otherwise dissipating" any asset of her own which she may be holding for any of the other defendants, consistent with the preliminary injunction that issued along with the Order.

**B.    *Proof of Defendant's Non-Compliance Is Clear and Convincing, and Defendant Has Not Been Reasonably Diligent***

Defendant Rachel M. Leff's failure to deliver the Affidavit of Assets demonstrates her disregard for her obligations under the Order.  Suffice it to say that under any standard, "diligence" should at least constitute minimal compliance.  As noted above, a demonstration of Defendant's bad faith or willfulness is not required for civil contempt.  *See, e.g. Paramedics Electromedicina Comercial, Ltda,* 369 F.3d 645, 655.  Nonetheless, in this case, Defendant's failure to comply does tend to suggest bad faith.  First, compliance should have been easy.  Second, even

if a lack of diligence were an excuse for failure to comply with a court order, which it is not, it is hard to believe that Mrs. Leff's failure to respond results merely from forgetfulness or an otherwise busy schedule. By her own account, as of September 10, 2007, Mrs. Leff was not working. She has chosen to leave the state of New York, leaving her children in the custody of their father (despite the fact that he is currently the target of a major criminal investigation), which eliminates her parenting duties. She has, by her own account, enough cash, in the form of "advance payments" from Mr. Leff of various living expenses, to live comfortably without working. Thus, there has been no suggestion of any pre-existing duty that would interfere with her compliance with the order, certainly not of any duty that would outweigh the Court's Order. The logical conclusion is that Mrs. Leff's failure to respond is the result either of a total lack of appreciation of the significance of the Order or of a willful disregard for it.

## II.

### THE COURT SHOULD GRANT
### PLAINTIFF'S REQUESTED RELIEF

Courts in the Second Circuit impose sanctions on a party held in civil contempt to serve either or both of two purposes, "to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman* v. *Stein,* 98 F.3d 717 (2d Cir. 1996) *citing U.S.* v. *United Mine Workers of America*, 330 U.S. 258, 302-04 (1947); *see also EEOC* v. *Local 638*, 81 F.3d at 1177. "A court has *broad discretion* in the context of contempt to fashion an order to coerce compliance with a prior judgment." *See Berger* v. *Heckler*, 771 F.2d 1556, 1568-1569 (2d Cir. 1985) *citing Perfect Fit Indus., Inc.* v. *Acme Quilting Co.*, 673 F.2d 53, 56-57 (2d Cir.), *cert. denied,* 459 U.S. 832 (1982) (emphasis added). "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *McComb* v. *Jacksonville Paper Co.,* 336 U.S. 187, 193 (1949); *Perfect Fit Indus., Inc.* v. *Acme Quilting Co.,* 673 F.2d 53, 56-57. In enforcing its orders, a district court may take such steps as are ap-

-8-

propriate given the resistance of the noncompliant party. *See Berger* v. *Heckler,* 771 F.2d 1556, 1569.

The relief requested under item (a), repatriation of assets, is well within the court's "broad discretion" and its power to "frame a sanction to fit the violation." *See* 11A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure: Civil* § 2960 (2007). This remedy creates no additional financial burden beyond the relief already granted under the Order, other than those resulting from the jurisdictional limitations of the Court's attachment order. Were Mrs. Leff not at present living and thus holding assets outside of the State of New York, all of the assets that Plaintiff requests that she be ordered to repatriate would be available for attachment, including the cash and/or bank accounts that she will presumably be accessing for the payment of any shipping or other incidental costs of compliance. Plaintiff requests that, given Mrs. Leff's evident resistance to compliance with court orders, Plaintiff not be required at this time to seek a Florida attachment against Mrs. Leff, with the additional delay and cost that would attend. As Plaintiff noted in passing in its Memorandum of Law in support of an order of civil contempt against Mr. Leff dated September 21, 2007, an order to repatriate assets as a remedy to purge contempt has been granted by this Court as recently as last year. *See, e.g., JSC Foreign Economic Ass'n Technostroyexport* v. *International Development and Trade Services, Inc.,* 2006 WL 1148110 (S.D.N.Y. 2006).

The relief requested under items (b) and (c) is also well within the Court's power and discretion to grant, as it is only an expansion of the scope of relief requested pursuant to New York C.P.L.R. § 6220 at the Show Cause hearing before Judge Swain on September 10, 2007 (the "September 10 Hearing"). Pursuant to C.P.L.R. § 6220, "the court may order disclosure by any person of information regarding any property in which the defendant has an interest, or any debts owing to the defendant." Since there is a grave concern at this time that Mr. Leff may be

dissipating his assets by giving them to Mrs. Leff, an ongoing accounting of her income is necessary to establish receipt of any such assets on a real-time basis, both to ascertain that Mr. Leff is not violating the court-ordered injunction against dissipation of his assets, and (1) to establish that Mrs. Leff is not dissipating any of the assets that she has admitted that he gave to her in July or August 2007, or any other assets that she may own, in violation of the Court's preliminary injunction and (2) to establish the extent to which she may already have done so with an eye to retrieving the dissipated funds, if possible. This relief is thus justified pursuant to the New York State attachment law as a coercive sanction ensuring that Mrs. Leff complies with the Court's Order going forward. While this remedy is more burdensome than a single notarized listing of assets, it is also quite justified under the circumstances: at the September 10 Hearing, Mrs. Leff and her counsel gave little impression that they were aware that in receiving gifts and spending money given to her by Mr. Leff, Mrs. Leff might in fact be guilty of receiving and dissipating stolen assets. Mrs. Leff's failure to comply in any way with the Court's September 10 Order evinces a total disregard for, or perhaps lack of understanding of, the significance of the Court's Order. It has become quite clear that Mrs. Leff and her counsel cannot be relied on to make judgments about what constitutes compliance with that Order on their own, and therefore a detailed history of her finances and a real-time accounting of her activity is necessary so that others may do so for them.

-10-

## CONCLUSION

The motion to hold Defendant Rachel M. Leff in contempt should be granted, and the Court should order the requested additional relief as sanctions for such contempt and to ensure Defendant Rachel M. Leff's continued compliance with the Order.

Dated:     New York, New York
           September 26, 2007

CAHILL GORDON & REINDEL LLP

By: _____
    Thomas J. Kavaler
    David N. Kelley
    80 Pine Street
    New York, New York   10005
    (212) 701-3000

*Attorneys for Plaintiff ABN AMRO
Mortgage Group, Inc.*