Joel M. Miller
Charles R. Jacob III
Jeremy M. Sher
MILLER & WRUBEL P.C.
250 Park Avenue
New York, New York 10177
(212) 336-3500



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYDIAN PRIVATE BANK,
d/b/a VIRTUALBANK,

                        Plaintiff,

    -against-

STEVEN M. LEFF, RICHARD A. LEFF,
RACHEL M. LEFF, and NATIONAL
SETTLEMENT AGENCY, INC.,

                    Defendants.

Case No. **07 CIV 8173** (RMB)

ECF Case

**COMPLAINT**

        Plaintiff Lydian Private Bank, d/b/a VirtualBank ("VirtualBank"), by its

attorneys Miller & Wrubel P.C., as and for its Complaint against defendants alleges as

follows:

## ALLEGATIONS COMMON TO
## ALL CAUSES OF ACTION

### Introduction

    1.     VirtualBank seeks to recover approximately $1.4 million it

entrusted to defendants, who represented they would act as VirtualBank's attorneys and

closing agents in a series of mortgage loan closings. Defendants promised to maintain

VirtualBank's entrusted funds in an attorney escrow account for use in mortgage loan

closing transactions. Instead of safeguarding these entrusted funds as VirtualBank's

attorneys and closing agents, defendants National Settlement Agency, Inc. ("NSA") and

Steven M. Leff, Richard A. Leff, and Rachel M. Leff (collectively, the "Individual

Defendants") diverted these funds from VirtualBank's escrow account, allowed others to

divert these funds, or commingled their funds with VirtualBank's funds.

### The Parties

2.      VirtualBank is chartered by the Office of Thrift Supervision of the

United States Treasury as a Federal savings association within the meaning of 12 U.S.C.

§ 1464.  VirtualBank's home office is located at 3801 PGA Boulevard, Suite 700, Palm

Beach Gardens, Florida 33410-2756.  VirtualBank is engaged in the business of, inter

alia, mortgage lending.

3.      On information and belief, defendant Steven M. Leff ("Steven

Leff") resides at 47 Skylark Road, Massapequa Park, New York 11762.  Steven Leff is

the President of defendant NSA and is or was an attorney admitted to practice law in the

State of New York.  On further information and belief, at all relevant times Steven Leff

held himself out as an attorney in connection with offering NSA's mortgage loan closing

and settlement services to VirtualBank.

4.      On information and belief, defendant Richard A. Leff ("Richard

Leff") resides at 10 Park Road, Short Hills, New Jersey 07078.  On further information

and belief, Richard Leff is In-House Counsel of NSA and is or was an attorney admitted

to practice law in the State of New York, and at all relevant times held himself out as

such in connection with offering NSA's mortgage loan closing and settlement services to

VirtualBank.

2

5.      On information and belief, defendant Rachel M. Leff ("Rachel Leff") last resided at 15 Anvil Ct., East Hampton, New York 11937.  On further information and belief, Rachel Leff is Chief Executive Officer of NSA.

6.      On information and belief, defendant NSA is a New York corporation with its principal office at 404 Park Avenue South, New York, New York 10016.  At all relevant times, NSA held itself out as engaged in the business of providing mortgage loan closing and settlement services.

## Jurisdiction

7.      VirtualBank brings this action under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The amount in controversy in this action exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

8.      Pursuant to 12 U.S.C. § 1464(x), plaintiff VirtualBank is a citizen of the State of Florida.

9.      Defendants NSA, Steven Leff, and Rachel Leff are citizens of the State of New York, and defendant Richard Leff is a citizen of the State of New Jersey.

10.     Defendants are subject to personal jurisdiction in this Court because, as more fully set forth below, they transacted business in the State of New York and contracted with VirtualBank to supply services in the State of New York.

## Venue

11.     This action is properly brought in the Southern District of New York pursuant to 28 U.S.C. § 1391(a) and (c).  Jurisdiction in this action is founded on diversity of citizenship, this District is one in which a substantial part of the events or

omissions giving rise to VirtualBank's claims occurred, and defendants are subject to personal jurisdiction in this District.

## Defendants' Diversion of VirtualBank's Funds

### A.    The Service Agreement

12.    NSA and the Individual Defendants were engaged in the business of providing settlement services for mortgage refinance transactions involving properties in the State of New York.

13.    The services provided by NSA and the Individual Defendants included maintaining attorney escrow accounts for the deposit of mortgage proceeds and disbursement of those funds in accordance with the settlement statements for such mortgage loans. The services also included arranging for title insurance to insure the interest of the lender in the property being mortgaged.

14.    NSA was engaged by VirtualBank to provide the above described services for certain mortgage refinance transactions.

15.    On or about May 14, 2002, VirtualBank and NSA entered into an agreement entitled the Service Agreement (the "Service Agreement").

16.    In the Service Agreement, NSA contracted to provide mortgage loan closing and settlement services (the "Services") for VirtualBank.

17.    NSA was also engaged by mortgage brokers and other third parties to provide the above described services in certain other mortgage refinance transactions where VirtualBank was the lender.

18.    In those instances where NSA arranged title insurance for VirtualBank as lender, it did so independently, without direction by VirtualBank, through

4

contacts or affiliations which NSA and/or the Individual Defendants had with various

title insurance agencies.

       19.    Final title insurance policies were obtained by NSA and/or the

Individual Defendants for mortgage refinance transactions involving VirtualBank as

lender, without exception for prior mortgages, based on representations by NSA and/or

the Individual Defendants that they would pay-off the amounts owed with respect to such

mortgages from the monies deposited with them by VirtualBank. Such representations

were made by NSA and/or the Individual Defendants on behalf of NSA as the settlement

services provider and not on behalf of VirtualBank as the lender.

**B.**    **The Fraudulent Representations**

       20.    Among the Services NSA agreed to provide for VirtualBank was

"state specific escrow services."

       21.    NSA, through the Individual Defendants, represented to

VirtualBank that in New York state, "state specific escrow services" meant that the

escrowing of funds for mortgage closings was required to be done by means of an

attorney escrow account.

       22.    In early 2007, NSA, through the Individual Defendants,

represented to VirtualBank that the Individual Defendants would set up a separate

attorney escrow account (the "Escrow Account") for funds VirtualBank would provide to

close transactions pursuant to the Service Agreement. Accordingly, defendants agreed

and undertook to act as attorneys and closing agents for VirtualBank with respect to

closings under the Service Agreement, and to hold VirtualBank funds provided for

closings in the Escrow Account in that regard. This was confirmed as recently as May

30, 2007, by an e-mail in which NSA stated "[W]e are the bank attny's for Lydian [VirtualBank]. We close their deals, in NY."

      23.     The Service Agreement also required NSA to: (a) prepare and settle all first mortgage closings; (b) obtain any and all payoffs necessary to clear title; (c) distribute loan proceeds only in accordance with VirtualBank's instructions; and (d) do the foregoing "so that VIRTUALBANK will have a valid first lien position" with respect to the property being mortgaged.

      24.     The substance of the Services and defendants' representations to VirtualBank, taken as a whole, was that defendants would receive and hold funds from VirtualBank in the Escrow Account until all steps were taken to obtain for VirtualBank clear first lien title to the property being mortgaged, and to distribute loan proceeds (consisting of the funds from VirtualBank) only in such circumstance as VirtualBank obtained clear first lien title to such property.

## C.    Defendants' Diversion of Funds from the Escrow Account

      25.     VirtualBank entrusted funds to defendants under the foregoing arrangement. Commencing at a time unknown to VirtualBank, the Individual Defendants began to divert VirtualBank's funds from the Escrow Account for their own purposes or permit others to divert VirtualBank's funds from the Escrow Account, rather than use VirtualBank's escrowed funds for approved mortgage closings, as agreed and as required by the duties defendants owed to VirtualBank.

      26.     VirtualBank learned of the unlawful diversions of funds through complaints by, among others, sellers of real property whose pre-existing mortgages should have been, but were not, paid in full as a result of approved closings of new mortgages VirtualBank funded on behalf of the new owner/mortgagor. Rather than remit

VirtualBank's funds from the Escrow Account as required to pay off such pre-existing mortgages, the Individual Defendants diverted VirtualBank's funds from the Escrow Account for their own use or stood by while others diverted VirtualBank's funds.

27.    VirtualBank subsequently learned that Rachel Leff commingled her funds with VirtualBank's funds held in the Escrow Account.

28.    On numerous occasions in June and July 2007, representatives of VirtualBank visited NSA's offices and met with Steven Leff, and ultimately his attorney, in an attempt to ascertain what had happened with respect to the "missing" VirtualBank funds. Neither Steven Leff nor his attorney, nor any other person on behalf of NSA, explained what had happened to the missing funds. While denying embezzlement himself, Steven Leff openly acknowledged the seriousness of the situation – that well over a million dollars was missing from the Escrow Account – and suggested that others at NSA might have embezzled VirtualBank's funds from the Escrow Account.

29.    On information and belief, at some time following Steven Leff's conversations with VirtualBank, Steven Leff provided a signed statement to the FBI admitting that, on numerous occasions, he diverted funds from NSA's client escrow accounts. On further information and belief, Steven Leff is currently being prosecuted in the United States District Court for the Eastern District of New York for embezzlement of funds belonging to NSA's clients.

30.    At present, VirtualBank is unable to ascertain with certainty the extent of the diverted VirtualBank funds. Steven Leff has acknowledged to VirtualBank at least the following "shortfalls" totaling $1,398,024.85 with respect to mortgage loans that VirtualBank funded:

| | |
|---|---:|
| Ubilla | $ 406,845.36 |
| Friedman | $ 280,397.14 |
| Ovanez | $ 393,826.39 |
| Ovanez | $ 168,545.58 |
| Perlingieri | $ 35,566.03 |
| Perlingieri | $ 81,021.19 |
| Perlingieri | $ 26,428.00 |
| Garcia | $ 3,510.90 |
| Coates | $ 173.00 |
| Hsu | $ 936.26 |
| Hsu | $ 450.00 |
| Malik | $ 325.00 |
| | |
| <u>Total</u>: | <u>$1,398,024.85</u> |

31.    On information and belief, including Steven Leff's admissions to VirtualBank and the FBI, the full amount of VirtualBank's funds diverted from the Escrow Account may be larger.

32.    VirtualBank has requested access to NSA's books and records sufficient to allow a forensic accountant retained by VirtualBank to investigate what happened to the diverted VirtualBank funds or to ascertain the full amount of such diverted funds. Defendants have not cooperated with VirtualBank's requests.

33.    VirtualBank has fully performed all its obligations under and relating to the Service Agreement.

## AS AND FOR A FIRST CAUSE OF ACTION
### <u>(Common Law Fraud against All Defendants)</u>

34.    VirtualBank repeats and realleges the allegations of paragraphs 1 - 33, above, as if fully set forth herein.

35.    Defendants represented to VirtualBank that (a) Steven Leff and Richard Leff were attorneys; (b) NSA, through Steven Leff and Richard Leff, would represent and perform legal services for VirtualBank; (c) defendants would serve as VirtualBank's agents for closings conducted pursuant to the Service Agreement; (d)

8

defendants would deposit VirtualBank's entrusted funds into the Escrow Account in their capacity as VirtualBank's attorneys and closing agents; and (e) NSA would draw upon VirtualBank's entrusted funds solely for use in mortgage loan closing transactions pursuant to the Service Agreement.

36.    Defendants made these representations to VirtualBank to convince VirtualBank to entrust millions of dollars to them.

37.    VirtualBank reasonably and justifiably relied on defendants' representations by entrusting millions of dollars to defendants on the belief that defendants would deposit these funds into the Escrow Account for use in mortgage loan closing transactions pursuant to the Service Agreement, and that defendants would uphold their duty as attorneys and closing agents to safeguard VirtualBank's entrusted funds.

38.    At all relevant times, defendants knew that their representations to VirtualBank were materially false.  Defendants did not maintain the Escrow Account as an attorney escrow account for VirtualBank's benefit.  Instead, the Individual Defendants diverted VirtualBank's entrusted funds from the Escrow Account for their own use, permitted others to divert these funds from the Escrow Account, or commingled their funds with VirtualBank's funds in the Escrow Account.

39.    Defendants deliberately concealed from VirtualBank the diversion of VirtualBank's entrusted funds by refusing to cooperate with VirtualBank's requests for financial information to identify the amount of diverted funds and the recipient(s) of these funds.

40.    Defendants further defrauded VirtualBank by failing to inform VirtualBank of the diversion of VirtualBank's entrusted funds from the Escrow Account, despite defendants' duty as attorneys and closing agents to provide VirtualBank with this information.

41.    The Individual Defendants knowingly consented to and participated in these unlawful acts.  As a result, the Individual Defendants are individually liable for fraud upon VirtualBank.

42.    As a result of defendants' fraud, VirtualBank has been damaged in an amount unknown to VirtualBank at present, but not less than $1,398,024.85.

43.    Judgment should be entered in favor of VirtualBank and against defendants, jointly and severally, for their fraud in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty against All Defendants)

44.    VirtualBank repeats and realleges the allegations of paragraphs 1 - 43, above, as if fully set forth herein.

45.    Defendants owed a fiduciary duty to VirtualBank arising from their agreeing to have VirtualBank entrust millions of dollars to them in reliance on their representations and the parties' attorney-client and agent-principal relationships. VirtualBank relied on defendants' purported superior knowledge of the New York "state specific escrow services" that required it to place funds in an attorney escrow account.

46.     Steven Leff admitted to VirtualBank that at least $1,398,024.85 of VirtualBank's entrusted funds is missing from the Escrow Account and suggested that NSA employees embezzled these funds. Defendants have failed to give VirtualBank any further explanation of what happened to VirtualBank's missing funds.

47.     On information and belief, Steven Leff admitted to the FBI that he had diverted funds from NSA's client escrow accounts.

48.     Defendants breached their fiduciary duty to VirtualBank by diverting or failing to prevent the diversion of not less than $1,398,024.85 in funds that VirtualBank entrusted to defendants for deposit into the Escrow Account.

49.     As a result of defendants' breach of fiduciary duty, VirtualBank has been damaged in an amount unknown to VirtualBank at present, but not less than $1,398,024.85.

50.     Judgment should be entered in favor of VirtualBank and against defendants, jointly and severally, for their breach of fiduciary duty in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligence against All Defendants)

51.     VirtualBank repeats and realleges the allegations of paragraphs 1 – 50, above, as if fully set forth herein.

52.     Defendants had a duty to VirtualBank to exercise reasonable care in holding VirtualBank's entrusted funds in escrow for use in mortgage loan closing transactions pursuant to the Service Agreement.

53.     Defendants breached their duty to VirtualBank by failing to make reasonable efforts to prevent the diversion of VirtualBank's funds from the Escrow Account.

54.     As a result of defendants' negligence, VirtualBank has been damaged in an amount unknown to VirtualBank at present, but not less than $1,398,024.85.

55.     Judgment should be entered in favor of VirtualBank and against defendants, jointly and severally, for their negligence in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Money Had and Received against All Defendants)

56.     VirtualBank repeats and realleges the allegations of paragraphs 1 - 55, above, as if fully set forth herein.

57.     VirtualBank entrusted not less than $1,398,024.85 to defendants to fund mortgage loan closing transactions pursuant to the Service Agreement.

58.     Defendants failed to use VirtualBank's entrusted money to fund mortgage loan closing transactions for VirtualBank as promised.  Instead, defendants diverted VirtualBank's entrusted funds from the Escrow Account for their own benefit.

59.     It is against equity and good conscience for defendants to retain funds they diverted from the Escrow Account.

60.    As a result of defendants' misconduct, defendants owe VirtualBank an amount unknown to VirtualBank at present, but not less than $1,398,024.85.

61.    Judgment should be entered in favor of VirtualBank and against defendants, jointly and severally, for money had and received in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Attorney Malpractice against NSA, Steven Leff, and Richard Leff)

62.    VirtualBank repeats and realleges the allegations of paragraphs 1 - 61, above, as if fully set forth herein.

63.    VirtualBank retained the legal services of NSA, Steven Leff, and Richard Leff, giving rise to an attorney-client relationship between these defendants and VirtualBank.

64.    The Individual Defendants or others diverted at least $1,398,024.85 of VirtualBank's entrusted funds from the Escrow Account.

65.    NSA, Steven Leff, and Richard Leff breached their duty to exercise the degree of care, skill, and diligence commonly exercised by an attorney by failing to safeguard VirtualBank's entrusted funds from diversion.

66.    As a result of the malpractice of NSA, Steven Leff, and Richard Leff, VirtualBank has been damaged in an amount unknown to VirtualBank at present, but not less than $1,398,024.85.

67.    Judgment should be entered in favor of VirtualBank and against defendants, jointly and severally, for their attorney malpractice in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Conversion against the Individual Defendants)

68.    VirtualBank repeats and realleges the allegations of paragraphs 1 – 67, above, as if fully set forth herein.

69.    The Individual Defendants agreed to hold VirtualBank's entrusted funds in the Escrow Account solely for the purpose of funding mortgage loan closing transactions pursuant to the Service Agreement.

70.    The Individual Defendants diverted VirtualBank's entrusted funds from the Escrow Account for their own benefit, despite knowing that they held VirtualBank's funds in escrow as attorneys for VirtualBank's benefit and lacked any right to take possession of these funds for their own use.

71.    VirtualBank demanded return of all diverted funds from the Individual Defendants.  The Individual Defendants refused VirtualBank's demand.  To date, VirtualBank has received no part of the funds that the Individual Defendants diverted.

72.    As a result of defendants' conversion of VirtualBank's entrusted funds, VirtualBank has been damaged in an amount unknown to VirtualBank at present, but not less than $1,398,024.85.

14

73.    Judgment should be entered in favor of VirtualBank and against the Individual Defendants for conversion in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Imposition of Constructive Trust against the Individual Defendants)

74.    VirtualBank repeats and realleges the allegations of paragraphs 1 – 73, above, as if fully set forth herein.

75.    The Individual Defendants promised VirtualBank that defendants would hold all funds VirtualBank entrusted to defendants in the Escrow Account and use these entrusted funds solely for permissible purposes under the Service Agreement.

76.    VirtualBank entrusted millions of dollars to the Individual Defendants in reliance on the Individual Defendants' promises.

77.    The Individual Defendants diverted to themselves not less than $1,398,024.85 in VirtualBank's entrusted funds, unjustly enriching themselves at VirtualBank's expense.

78.    The Court should impose a constructive trust on all funds that VirtualBank entrusted to the Individual Defendants and that the Individual Defendants diverted from the Escrow Account.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Restitution against the Individual Defendants)

79.    VirtualBank repeats and realleges the allegations of paragraphs 1 – 78, above, as if fully set forth herein.

15

80.    The Individual Defendants have no right in equity to retain funds VirtualBank entrusted to them for deposit into the Escrow Account and the Individual Defendants diverted for their own benefit.

81.    The Court should order the Individual Defendants to return to VirtualBank all funds VirtualBank entrusted to the Individual Defendants and that the Individual Defendants diverted for their own benefit.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Demand for Accounting against All Defendants)

82.    VirtualBank repeats and realleges the allegations of paragraphs 1 – 81, above, as if fully set forth herein.

83.    Without access to defendants' books and records, VirtualBank cannot know the complete extent of the diversion of VirtualBank's funds from the Escrow Account, or all the recipient(s) of these diverted funds, and thus lacks an adequate remedy at law.

84.    VirtualBank demanded access to defendants' books and records to determine the full amount of the diverted funds.  Defendants refused VirtualBank's demand.

85.    The Court should order defendants to account for all funds received from VirtualBank for deposit into the Escrow Account and that defendants, or others, diverted from the Escrow Account.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Breach of Contract against NSA)

86.    VirtualBank repeats and realleges the allegations of paragraphs 1 - 85, above, as if fully set forth herein.

16

87.    The acts and omissions of NSA set forth constitute a material breach by NSA of its obligations in the Service Agreement.

88.    VirtualBank is entitled, by means of an award of damages, to be put in the same position economically that it would have been in had NSA performed its obligations under the Service Agreement.

89.    Judgment should be entered in favor of VirtualBank and against NSA for its breach of the Service Agreement in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of NSA's breach until the date of judgment.

WHEREFORE, VirtualBank demands judgment in its favor and against defendants as follows:

(i)    on its First, Second, Third, and Fourth Causes of Action, awarding VirtualBank as against all defendants, jointly and severally, an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment;

(ii)    on its Fifth Cause of Action, awarding VirtualBank as against NSA, Steven Leff, and Richard Leff, jointly and severally, an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment;

(iii)    on its Sixth Cause of Action, awarding VirtualBank as against the Individual Defendants, jointly and severally, an amount to be

17

determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's entrusted funds from the Escrow Account until the date of judgment;

(iv)    on its Seventh Cause of Action, imposing a constructive trust on all funds that VirtualBank entrusted to the Individual Defendants and that the Individual Defendants diverted from the Escrow Account;

(v)    on its Eighth Cause of Action, ordering the Individual Defendants to make restitution to Virtual Bank in an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of the diversion of VirtualBank's funds from the Escrow Account until the date of judgment;

(vi)    on its Ninth Cause of Action, ordering defendants to account for all funds VirtualBank entrusted to defendants and that defendants or others diverted from the Escrow Account;

(vii)    on its Tenth Cause of Action, awarding VirtualBank as against NSA an amount to be determined, but not less than $1,398,024.85, plus interest at the statutory rate of 9% from the date(s) of NSA's breach until the date of judgment; and

(viii)    granting such other and further relief as this Court may deem just and proper in the circumstances.

Dated:  September 18, 2007

MILLER & WRUBEL P.C.

By: _____
Joel M. Miller
Charles R. Jacob III
Jeremy M. Sher
250 Park Avenue
New York, New York 10177
(212) 336-3500

*Attorneys for Plaintiff*
*Lydian Private Bank,*
    *d/b/a VirtualBank*